**Joseph C. MULLER,
Defendant/Appellant,**

v.

**RESOLUTION TRUST CORPORATION,
Plaintiff/Appellee.**

**No. CV 492–147.**

United States District Court,
S.D. Georgia,
Savannah Division.

Dec. 1, 1992.

James Hamrick Gnann, Jr., Savannah, GA, for plaintiff/appellee.

David Wynn Adams and James Robert Gardner, Savannah, GA, for defendant/appellant.

ORDER AND MEMORANDUM

NANGLE, District Judge.

Plaintiff/appellee Resolution Trust Corporation (RTC), receiver for Great Southern Federal Savings and Loan Association, brought an adversary proceeding against the following parties: defendant/appellant Joseph C. Muller (Muller); John C. Van Puffelen (Van Puffelen), debtor-in-possession in the underlying Chapter 7 case; and Savannah Marine Services, Inc. (Savannah Marine). The RTC sought a determination that it held a perfected first lien on and was entitled to proceeds from the sale of property of the bankruptcy estate and that it was entitled to reasonable attorneys' fees and costs pursuant to 11 U.S.C. § 506(b). Muller counterclaimed against the RTC, and Van Puffelen and Savannah Marine cross-claimed against Muller.

After consolidation with a related case, the bankruptcy court[1] held trial on August 27, 1991, and entered its Final Order and Judgment on March 31, 1992. This appeal by Muller ensued. For the reasons described below, the bankruptcy court's Final Order and Judgment dated March 31, 1992, will be affirmed.

FACTS

On June 19, 1990, Van Puffelen filed a petition under Chapter 11 of the Bankruptcy Code. As of the date of the petition, Van Puffelen owned the "dock tract," a 0.173 acre tract of real estate with an attached marine dock fronting the Savannah River in Chatham County, Georgia. Van Puffelen formerly owned the "tank tract," a 15.894 acre tract of real estate located behind the dock tract and connected to it by an easement.

On September 28, 1990, the bankruptcy court approved Van Puffelen's application to sell the dock tract. The dock tract was sold free and clear of all liens for $320,000.00, with valid liens to attach to the proceeds. The proceeds were deposited in the court registry, and were the subject of the adversary proceeding. RTC claims that it is entitled to the entire proceeds, while Muller contends that the RTC's lien is limited to $150,000.00.

1. The RTC's claim

Van Puffelen's outstanding obligations to Great Southern Federal Savings Bank, predecessor in interest to the RTC[2], totalled $346,269.39 at the time he filed for bankruptcy.

On April 3, 1987, Van Puffelen entered into two transactions with Great Southern. First, he executed a deed to secure debt in favor of Great Southern that secured both the repayment of the indebtedness evidenced by the note and the repayment of "any future advances, renewals, and any other indebtedness." This deed referenced an attached exhibit which described both the tank and dock tracts. Second, Van Puffelen executed a security agreement in favor of Great Southern covering "[t]he inventory, trade fixtures, docks, pilings, walkways, dolphins, moorings, pipeways, platforms, and related equipment located at

---

1. The Honorable John S. Dalis, Judge, United States Bankruptcy Court for the Southern District of Georgia.

2. On June 21, 1989, the Federal Home Loan Bank Board (the Board) determined that Great Southern was insolvent and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for Great Southern. Pursuant to 12 U.S.C. § 1729(a) (repealed), the Board created Great Southern Federal Savings and Loan Association (Great Southern Association) as a federally-chartered mutual association. Great Southern Association acquired the assets of Great Southern pursuant to an acquisition agreements dated June 21, 1989. On the same date, the Board appointed the FSLIC as conservator for Great Southern Association. The Fi-

nancial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, § 401(a); 103 Stat. 183, 354 (1989), abolished the FSLIC and substituted in its place the Federal Deposit Insurance Corporation (FDIC) to dispose of all assets held by the FSLIC. Under FIRREA, which became law on August 9, 1989, the RTC possesses the same rights and powers concerning depository institutions in receivership or conservatorship as the FDIC has under 12 U.S.C. §§ 1821, 1822, and 1823. *Id.* at 370. On June 22, 1990, the Office of Thrift Supervision (OTS), successor in interest to the Board under FIRREA, appointed RTC as receiver for Great Southern Association, replacing RTC as conservator for Great Southern Association.

or attached to the premises described [as the tank and dock tracts]." The security agreement provided that the collateral secured both a note executed by Van Puffelen in favor of Great Southern and all other obligations between the parties whether "now or hereafter existing." The deed and a UCC–1 financing statement were properly filed in accordance with Georgia law on the date that they were executed.

## 2. Muller's claim

Muller formerly owned and operated Joseph C. Muller, Inc. (Muller, Inc.), an insurance and real estate firm in Savannah, Georgia. On December 31, 1986, Muller sold all of his stock in Muller, Inc., to a group of investors. Shortly thereafter, Van Puffelen was brought in as a partner by the original purchasers of Muller, Inc. On June 1, 1987, the purchasers executed a new note.

Savannah Marine guaranteed the June 1, 1987, note to the extent of $100,000.00. To further secure this note, Van Puffelen[3] gave Muller a security interest in both the tank and dock tracts. The deed to secure debt executed by Van Puffelen provided that the conveyance was subject and subordinate to the April 3, 1987, deed to secure debt granted by Van Puffelen to Great Southern. Muller and Van Puffelen properly recorded this deed on June 10, 1987, and filed a notice of claim of lien disclosing Muller's security interest in the real estate records of the Clerk of Superior Court, Chatham County, Georgia. They filed no such notice in the personal property indices. The balance owed on the June 1, 1987, note is $152,599.57.

In 1988, Van Puffelen sought to sell the tank tract. Since the available sale proceeds were insufficient to pay off Great Southern, much less Muller, Muller executed a quitclaim deed on November 1, 1988, to release his second lien on the tank tract. The sale proceeds were given to Great Southern to reduce Van Puffelen's debt.

Muller released his second lien on the tank tract in reliance on the following affidavit made on November 2, 1988:

> I, Michael W. Lee,[4] authorized agent of Great Southern Federal Savings Bank, ... do hereby state that Great Southern Federal Savings Bank currently holds a Deed to Secure Debt on [the dock tract]. Said Deed to Secure Debt is currently in the amount of One Hundred Fifty Thousand and No/100 ($150,000.00) Dollars ... Great Southern Federal Savings Bank agrees not to increase above One Hundred Fifty Thousand Dollars ($150,-000.00), the Deed to Secure Debt on said property and waives any right in said property other than the Deed to Secure Debt in the amount of One Hundred Fifty Thousand Dollars ($150,000.00).

The deed to secure debt held by Great Southern was not modified of record to reflect the Lee affidavit's contents.

## 3. The proceedings below

In its Order and Judgment, the bankruptcy court held that the provisions of 12 U.S.C. § 1823(e) applied to render the November 2, 1988, Lee affidavit unenforceable against the RTC by Muller. Former § 1823(e), which only applied to the FDIC in its corporate capacity, was amended by FIRREA in 1989 to extend the applicability of the statute to "a receiver of any insured depository institution," including the RTC in this case. 12 U.S.C. § 1823(e). The bankruptcy court construed 12 U.S.C. § 1823(e) to have retroactive application to agreements whose effective date preceded the effective date of FIRREA. The Court further rejected Muller's contention that retroactive application deprived him of a valuable property right in violation of the Fifth Amendment to the United States Constitution. The bankruptcy court entered judgment for the RTC and directed the Clerk to pay an amount equal to all of the funds held in the Court's registry as proceeds from the sale of the dock tract to the RTC.

---

**3.** Van Puffelen is not personally liable on the June 1, 1987, note.

**4.** Mr. Lee was a senior vice-president with Great Southern. The parties do not dispute his authority to act on behalf of the financial institution.

**654**

## DISCUSSION

This Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 158(a). The clearly erroneous standard of review applies to the bankruptcy court's factual determinations, while this Court reviews the bankruptcy court's conclusions of law de novo. *In re Sublett*, 895 F.2d 1381 (11th Cir.1990).

Muller raises the following issues on appeal:

1. Whether the bankruptcy court erred in failing to find that manifest injustice resulted from that Court's retroactive application of 12 U.S.C. § 1823(e); and

2. Whether the bankruptcy court's application of 12 U.S.C. § 1823(e) to bar Muller's claim to the proceeds constituted a taking of property without compensation in violation of the Fifth Amendment of the United States Constitution.

Enforcement of the Lee affidavit is barred by federal common law and by retroactive application of 12 U.S.C. § 1823(e). This result does not support a finding of a Fifth Amendment violation.

### I. THE LEE AFFIDAVIT IS NOT ENFORCEABLE AGAINST THE RTC.

Both the *D'Oench* doctrine and 12 U.S.C. § 1823(e) bar Muller's enforcement of the Lee affidavit to limit the RTC's interest in the funds held by the bankruptcy court.

#### A. Analysis under federal common law

■ In *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), a bank obtained a promissory note to prevent the bank's books from reflecting a loss from another debtor which had defaulted. An understanding existed between the bank and the maker of the note that the bank would not enforce the note and that the interest paid would be remitted to the maker.[5] When the bank failed, the FDIC attempted to collect on the note. The maker of the note claimed that the note was given

without any consideration and with the understanding that the bank would not attempt to enforce the note. The Supreme Court held the maker of the note liable, citing the existence of "a federal policy to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans." *Id.* at 457, 62 S.Ct. at 679. According to the Court,

> The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled.

*Id.* at 460, 62 S.Ct. at 681. The *D'Oench* doctrine has been expanded to protect the FDIC as receiver and the FSLIC in its receiver and corporate capacities. *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101 (11th Cir.1990).

Muller argues that the *D'Oench* doctrine is not applicable in the case at bar since Eleventh Circuit cases applying the doctrine are factually distinguishable. Specifically, Muller claims that *D'Oench* is inapposite since he was a third party to the loan transaction, not a borrower who seeks to escape his obligations. While the cases do not address this distinction, the underlying policy behind the *D'Oench* doctrine supports its application in this case.

■ The *D'Oench* doctrine applies to "virtually all cases where a federal depository institution regulatory agency is confronted with an agreement not documented in the institution's records." *Baumann v. Savers Fed. Savings & Loan Ass'n*, 934 F.2d 1506, 1510 (11th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992). When discussing the codification of the *D'Oench* doctrine,[6] a

---

5. In fact, the receipts for the original notes contained the following statement: "This note is given with the understanding that it will not be called for payment. All interest payments to be

repaid." *D'Oench, Duhme*, 315 U.S. at 454, 62 S.Ct. at 678.

6. *See* 12 U.S.C. § 1823(e).

unanimous Supreme Court described its purpose as follows:

> One purpose ... is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, ... and when the FDIC is deciding whether to liquidate a failed bank, ... or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank ... The last kind of evaluation, in particular, must be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." [Cit. omitted]. Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

*Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). As a result, a crucial inquiry is whether the existence of the alleged agreement can be determined by a review of the bank's records. *Federal Deposit Ins. Corp. v. McCullough*, 911 F.2d 593 (11th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991) (two documents in bank file insufficient to show bank's obligation to transfer the additional property where one memorandum vaguely alluded to possibility of transfer and letter mentioned only "amendment to mortgage").

The Lee affidavit constituted a collateral agreement whose presence was not readily ascertainable from a review of Great Southern's records. The bankruptcy court found that "there is no evidence before me ... that the Lee affidavit has been an 'official record' of Great Southern continuously since its execution." Bankr.Ct.Op., p. 14. Since federal bank examiners should be able to rely on a bank's records to evaluate the worth of its assets, enforcement of the Lee affidavit would violate the policy behind *D'Oench*. Great Southern's records indicated that Van Puffelen's debt

totalled approximately $350,000.00; the RTC relied on this amount in its assessment of Great Southern's condition, not the $150,000.00 limitation contained in a collateral, unrecorded side agreement.

As a result, the Lee affidavit cannot be enforced unless it falls into one of "only three types of situations where an assertion of *D'Oench* failed to bar the defense raised by the debtor to resist enforcement of the debt instrument: when the borrower is completely innocent of any intentional or negligent deception in her defense against her debt; when the defense is manifest on the face of the obligation the insurer seeks to enforce; and when the borrower is a nonnegligent victim of fraud in the factum." *Vernon*, 907 F.2d at 1106–1107. None of these situations is present here.

■ The first and third exception warrant little discussion. A party's innocence is no longer sufficient to avoid application of *D'Oench*: Application of the *D'Oench* doctrine is appropriate even in the absence of bad faith, recklessness or negligence on Muller's part. *Federal Savings & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558 (11th Cir.1991) (noting that the Supreme Court's decision in *Langley* requires no such evidence for application of *D'Oench* in a case involving misrepresentations made by savings & loan about its financial status). Additionally, there have been no allegations of fraud in the factum. *See Baumann*, 934 F.2d at 1516 (relying on dictum in *Langley*, fraud in the factum renders an instrument entirely void, but fraudulent inducement does not defeat enforcement by the FDIC).

The second situation requires more analysis. The *Vernon* court cited *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir.1981), as an example of a facially manifested defense. In *Howell*, the debtor claimed that the leases at issue were invalid since the lending institution failed to comply with certain terms. The leases manifested the bilateral nature of the lessor's and lessee's rights and obligations, and were located in the bank's files. The Court held that where the foundation and basis of the debtor's defense arguably met

the nonsecrecy requirements of *D'Oench,* the fact that the Court must go outside of the leases to test the strength and validity of the defense was not fatal. *Id.* at 748.

In the case at bar, the Lee affidavit was not part of Great Southern's records so as to alert the federal receiver of any limitation on the deed to the dock tract. Even if the Lee affidavit had been included in the bank's records, it does not manifest the bilateral nature of the bank's and Muller's obligations. It evinces only a promise by Great Southern to not increase the deed on the dock tract above $150,000, and never indicates the presence of any consideration. In addition to the lack of facially manifested bilateral obligations, the affidavit only refers indiscriminately to "property." From the commencement of the transaction, Van Puffelen and Great Southern considered the personalty as a separate source of security as evidenced by the security agreement and UCC–1 financing statement executed on April 3, 1987. The drafter's use of "property" does not adequately define whether Great Southern purported to limit its rights in the realty, personalty, or both.[7] Given the absence of the affidavit in the bank's records and the investigatory work that the federal receiver would have to perform to discover the basis and foundation of Muller's claim of limitation, Muller's claim is not sufficiently analogous to *Howell* to warrant a waiver of the protection offered by *D'Oench.*

Thus, the Lee affidavit is not enforceable under *D'Oench* and its progeny. First, the Lee affidavit's absence from the records of Great Southern makes it an undisclosed condition on the otherwise unqualified notes between Van Puffelen and Great Southern. Second, ascertaining its true meaning would require the federal receiver to examine whether the affidavit applies to

realty alone or realty and personalty. Such an inquiry is not permitted under *D'Oench. See Twin Constr., Inc. v. Boca Raton, Inc.,* 925 F.2d 378 (11th Cir.1991) (where document signed by only one party, *D'Oench* and § 1823(e) do not permit an inquiry into whether non-signatory was bound). Finally, the federal policy of protecting public funds counsels this result.

B. Retroactive application of 12 U.S.C. § 1823(e)

■ Even if the relationship of the parties prevents *D'Oench* from adequately resolving the current dispute, the judgment of the bankruptcy court must be affirmed since a retroactive application of § 1823(e) counsels the non-enforceability of the Lee affidavit. The current version of 12 U.S.C. § 1823(e) provides as follows:

**Agreements against interests of Corporation [the FDIC]:** No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase *or as receiver* of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

---

7. Assuming both that the affidavit appeared in Great Southern's records and that bilateral obligations were manifested, the case at bar would be similar to *Federal Savings & Loan Ins. Corp. v. Two Rivers Assocs.,* 880 F.2d 1267 (11th Cir. 1989). In *Two Rivers,* a mortgagor asserted that the FSLIC was not entitled to foreclose on his mortgage since the defunct savings and loan had breached its obligation to fund the entire project. Although a record of the bank evi-

denced an obligation to provide an additional loan, the Court found that it was not sufficient to allow the mortgagor to advance defenses against the FSLIC to fund the entire project. *Id.* at 1275–1276. Similarly, while the Lee affidavit in the case at bar could evidence a limitation on the deed on the underlying realty, it does not facially manifest Great Southern's obligation to limit use of the personalty as security.

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C.A. § 1823 (1989) (emphasis added).

The Supreme Court has not announced a clear rule to determine when a statute should be retroactively applied. Two distinct, conflicting lines of cases exist: *Bradley v. Richmond School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (statute at time of decision should be applied unless legislative history states otherwise or manifest injustice results), and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("[r]etroactivity is not favored in the law"). The Supreme Court has declined to clarify this confusion. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990).

Applying the analysis announced in *Bradley* appears appropriate in light of *United States v. Peppertree Apartments*, 942 F.2d 1555, 1561 (1991), *vacated sub nom. Bailes v. United States*, — U.S. —, 112 S.Ct. 1755, 118 L.Ed.2d 419 *on remand*, 961 F.2d 1538 (11th Cir.1992) ("unless otherwise directed by the United States Supreme Court or the Eleventh Circuit en banc, we are bound by precedent to apply the *Bradley* analysis").

*Bradley* requires a Court to apply the law in effect at the time it renders its decision unless there is statutory direction or legislative history to the contrary. *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. Where the legislative history could support either prospective or retroactive application, the statute may be applied retroactively. *See Bradley*, 416 U.S. at 715–716, 94 S.Ct. at 2018 ("While [we do not] purport[ ] to hold that courts must always thus apply new laws to pending cases in the absence of clear legislative direction to the contrary, we do note that insofar as the legislative history of [the statute at issue] is supportive of either position, it would seem to provide at least implicit support for the application of the statute to pending cases").

Amended § 1823(e) was " 'designed to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default.' " *Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1096 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992), *citing* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 330, reprinted in 1989 U.S.Code Cong. & Admin.News 86, 126. Despite this mandate, neither the floor debates nor committee reports on FIRREA indicated whether amended § 1823(e) should be applied only prospectively. *Wright*, 942 F.2d at 1095. In light of the increasing bank failures in the United States, a reasonable interpretation of § 1823(e) is that Congress included those provisions to aid the FDIC in its mounting responsibilities. *Id.* at 1096. Thus, a retroactive application of § 1823(e) would further this congressional intent. *Id.*

Even if the legislative history does not support retroactive application of § 1823(e), *Bradley* permits retroactive application of a statute unless "manifest injustice" results. *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. Manifest injustice requires consideration of the nature and identity of the parties, the nature of their rights, and the nature of the impact of the change in law upon those rights. *Id.* at 717, 94 S.Ct. at 2019.

The nature of the parties supports retroactive application of § 1823(e). "[I]n mere private cases between individuals, a court will and ought to struggle hard against a construction which will be a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws." *United States v. Schooner Peggy*, 1 Cranch 103, 110, 2 L.Ed. 49 (1801), *cited in Bradley*, 416 U.S. at 712, 94 S.Ct. at 2016. Circumstances leading to the enactment of FIRREA involved matters of great national concern: Treasury Secretary Nicholas Brady characterized the situation as "the savings and loan crisis," while President Bush remarked that it was a "national problem." *Wright*, 942 F.2d at 1096, *citing* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 304–305, reprinted in 1989 U.S.Code Cong. & Ad-

min.News 100–101. The presence of a great national concern counsels retroactive application of § 1823(e).

Manifest injustice occurs where retroactive application of a statute "would infringe upon or deprive a person of a right that had matured or become unconditional," or where "the possibility [exists] that new and unanticipated obligations may be imposed upon a party without notice and opportunity to be heard." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021. Neither of these concerns is present here since § 1823(e) simply codified the existing common law announced in *D'Oench. Wright,* 942 F.2d at 1096; *see also Gordy,* 928 F.2d at 1562 (12 U.S.C. § 1823(e) is the statutory counterpart of *D'Oench* ). Although *D'Oench* has not been applied in this Circuit in the precise factual situation present in this case, its basic principle that unrecorded collateral agreements will not be enforced against a federal receiver and its increasingly broad application indicate that manifest injustice would not result from a retroactive application of § 1823(e).

The Lee affidavit is not enforceable under 12 U.S.C. § 1823(e) since it diminishes the RTC's interest in the proceeds held by the bankruptcy court. Although the Lee affidavit satisfies the writing requirement imposed by § 1823(e)(1), it was not executed by the depository institution and any person claiming an adverse interest thereunder. *See* 12 U.S.C. § 1823(e)(2). The obligor, Van Puffelen, did not sign the Lee affidavit, nor did Muller, the party seeking to bind Great Southern. The Lee affidavit was approved by neither Great Southern's board of directors nor its loan committee pursuant to § 1823(e)(3), and was not an official record of the depository institution as required by § 1823(e)(4).

## II. *Muller's Fifth Amendment Claim*

Muller next argues that retroactive application of § 1823(e) to bar enforcement of the Lee affidavit constitutes an uncompensated taking in violation of the Fifth Amendment. *See* U.S. Const. amend. V ("... nor shall private property be taken for public use, without just compensation.")

Assuming that the benefit allegedly conferred by the Lee affidavit would be property within the meaning of the Fifth Amendment, this Court finds that the present application of § 1823(e) does not violate the Constitution.

When determining whether a taking forbidden by the Fifth Amendment has occurred, the Court should rely on "ad hoc, factual inquiries into the circumstances of each particular case." *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 224, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986). Three factors are of "particular significance: (1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' [Cits. omitted]." *Id.* at 225, 106 S.Ct. at 1026.

The Eighth Circuit recently held that a Fifth Amendment taking did not occur by retroactive application of § 1823(e). *North Arkansas Medical Ctr. v. Barrett,* 962 F.2d 780 (8th Cir.1992) (complaint by depositor against the FDIC as receiver for a failed thrift dismissed since an agreement to pledge securities as collateral for certificates of deposit and other accounts did not satisfy the requirements of § 1823(e)). Although retroactive application of § 1823(e) resulted in an economic impact upon the depositor, it was dealing in an area that was generally regulated by federal law at the time it made its investment and formed its expectations. *Id.* at 790. Additionally, the depositor had "'more than sufficient notice'" that enforcing claims against a failed thrift would be subject to federal regulation. *Id.* Section 1823(e) also "adjusts the benefits and burdens of economic life to promote the common good." With the FDIC acting as a receiver, preserving the thrift's funds benefits the depositors and creditors of the failed financial institution, not the government. *Id.* The same reasoning applies in the case at bar, resulting in no Fifth Amendment violation.

Muller's failure to adequately protect himself also counsels against the finding of

a Fifth Amendment violation. *See Federal Savings & Loan Ins. Corp. v. Griffin*, 935 F.2d 691 (5th Cir.1991) ("This is not a taking that deserves compensation because the taking is a consequence of his own failure to have his agreements ... [as] part of the bank records"). Muller, who secured counsel to draft the Lee affidavit, failed to insist upon its inclusion in Great Southern's records. Since Muller did not adequately protect his interests, he has no viable Fifth Amendment claim.

## CONCLUSION

Under the *D'Oench* doctrine and 12 U.S.C. § 1823(e), Muller cannot enforce the Lee affidavit against the RTC since it was an unrecorded collateral agreement limiting the terms of a facially unqualified note. In addition, the retroactive application of § 1823(e) does not constitute a taking prohibited by the Fifth Amendment since the statute promotes the common good and Muller failed to safeguard his interests. The Eleventh Circuit realized that this result "may appear inequitable." *Gordy*, 928 F.2d at 1567. However, the *D'Oench* doctrine "favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements," over the interests of a party who can. *McCullough*, 911 F.2d at 600. Accordingly,

IT IS HEREBY ORDERED that the judgment of the bankruptcy court be and is affirmed.