The **FEDERAL SAVINGS & LOAN INSURANCE CORP.**, as Receiver for Vernon Savings and Loan Association, FSA, Plaintiff–Appellee,

*v.*

**William J. GORDY; Mamie K. Kovac, Defendants–Appellants,**

**Robert D. Word, Jr.; Elizabeth Payne Word, Defendants.**

No. 90–7367.

United States Court of Appeals, Eleventh Circuit.

April 25, 1991.

M. Roland Nachman, Jr., John S. Bowman, Robin G. Laurie, Balch & Bingham, Montgomery, Ala., for defendants-appellants.

Warren B. Lightfoot, Mac M. Moorer, William H. King, III, Lightfoot, Franklin, White & Lucas, Birmingham, Ala., Paul E. Ridley, Peter F. Lovato, III, John P. Greenan, Hopkins & Sutter, Dallas, Tex., James Scott Watson, Federal Deposit Ins. Corp., Appellate Litigation, Legal Div., Washington, D.C., for plaintiff-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

Appellants William J. Gordy and Mamie L. Kovac appeal from a summary judgment by the District Court for the Northern District of Alabama in favor of appellee, The Federal Deposit Insurance Corporation ("FDIC").[1] The district court based its ruling on a body of federal common law known as the *D'Oench* doctrine, which protects FDIC and The Federal Savings & Loan Insurance Corporation ("FSLIC") from "agreements" between borrowers and banks which tend to misrepresent the value of a bank's assets.[2] We must decide

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The lawsuit initially was filed by The Federal Savings & Loan Corporation ("FSLIC"). However, on August 9, 1989, The Federal Deposit Insurance Corporation ("FDIC") became the statutory successor to FSLIC and was substitut-

ed in this action by operation of law. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 401(a), 103 Stat. 183, 354 (1989).

2. *See D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 *reh'g denied,* 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942).

whether the court correctly determined that such agreements encompass a bank's warranty of the truth of its false financial statement, which was relied upon reasonably and in good faith by appellants in the course of negotiations culminating in their guaranteeing the notes presently sued upon. We also must decide whether the district court correctly determined that the bank's misrepresentation of its financial condition constituted fraud in the inducement, and not fraud in the factum, which would have rendered the guaranties void *ab initio* and thus provided FDIC, the bank's successor-in-interest, no basis for suit. Because we agree that the district court correctly decided these questions, its judgment is AFFIRMED.

## I

The relevant facts are not in dispute. In December of 1982, appellants commenced negotiations with Vernon Savings & Loan Association, FSA ("Vernon")[3] in connection with appellants' plans to acquire and develop a hotel in Natchez, Mississippi. These negotiations culminated in a transaction whereby Natchez Hotel Properties, Inc. ("Natchez Hotel") received funds for the acquisition and development of the hotel. The project was financed by industrial revenue bonds issued by the City of Natchez; the bond issuance closed on September 1, 1984. As part of the transaction, Vernon issued a letter of credit in favor of the indenture trustee, Merchants National Bank of Mobile. The letter, insured by Industrial Indemnity Company of California ("Industrial Indemnity"), entitled the indenture trustee to make a demand on the letter of credit upon the occurrence of any event of default specified in the documents connected with the bond issue. One such specified event was the insolvency of Vernon. On March 31, 1985, appellants exe-

cuted facially unqualified guarantees obligating them to pay $3,167,312 upon the occurrence of a default event specified in the bond closing documents.

Vernon, it turned out, unknown to the appellants, was insolvent throughout the negotiations described above. On April 21, 1987, the indenture trustee, having learned of the insolvency, demanded payment of Vernon pursuant to its letter of credit obligation.[4] Industrial Indemnity paid the amount demanded by the trustee and entered into a negotiated settlement with Vernon, which acquired the notes and underlying guaranties executed by appellants. Subsequently, FSLIC, as receiver for Vernon, made demands of Natchez Hotel for payment of the notes. Natchez Hotel defaulted. On November 29, 1988, FSLIC filed this suit against the appellants seeking payment of the amounts secured by the guaranties.

In the district court, the appellants defended and counterclaimed against FSLIC on the basis of misrepresentations made by Vernon to the appellants during the course of the negotiations regarding the plans to acquire and develop the Natchez Hotel. At the heart of the misrepresentations was a written statement of Vernon's financial condition as of June 30, 1984, which Vernon submitted for the use of all participants in the Natchez Hotel transaction. At a time when Vernon already was insolvent, the statement portrayed a sound financial condition. The truth of the statement was certified by an October 9, 1984 certificate signed by a vice-president of Vernon. The guaranties signed by appellants did not indicate that Vernon had certified the truth of its financial statement or that the truth thereof was a condition to appellants' fulfillment of their obligations under the facially unqualified guaranties.

---

**3.** As used herein, "Vernon" refers not only to Vernon Savings & Loan Association, FSA, but also to Vernon State and Vernon Federal.

**4.** The trustee at this point was First Alabama Bank of Mobile, N.A., the successor-in-interest to Merchants National Bank of Mobile.

The parties eventually filed cross-motions for summary judgment. In an October 25, 1989 opinion, the district court identified the threshold issue with regard to the motions as whether Vernon's misrepresentation and concealment of its financial condition provide a basis for defendants' defense or counterclaims in light of the *D'Oench* doctrine. Conceding fraud on the part of Vernon, its predecessor-in-interest, appellee argued that the doctrine precluded appellants from relying on Vernon's misrepresentations as a basis for a defense or counterclaim. Appellants argued, *inter alia,* that given their good faith and reasonableness, the misrepresentations did not constitute a "secret agreement" within the meaning of *D'Oench,* and also that because Vernon's misrepresentations went to the essence of the guaranties, the guaranties were void *ab initio* and thus provided no basis for appellants' liability.

In the October 25 opinion, the district court preliminarily granted appellee's summary judgment motion, accordingly denying those of appellants. The court rejected appellants' contention that Vernon's misrepresentations created a condition to their duty to pay under their guaranties and that this condition fell outside the scope of the *D'Oench* doctrine: "[T]he court finds no agreement which creates a condition to or qualification of defendants' obligation to pay on their guaranties.... There was no written agreement whereby defendants' duty to pay was so conditioned."[5] October 25, 1989 Opinion at 14–15. The court also rejected appellants' argument that Vernon's misrepresentations constituted fraud in the factum. In a December 4, 1989 opinion, the court revisited the fraud in the factum issue before finalizing its ruling in favor of appellee: "No matter how gross or severe the alleged fraud may be, it did not relate to the nature, contents or terms of the guaranty agreements. At best, it

was a mere inducement to their execution." December 4, 1989 Opinion at 2. Because voidable documents, unlike void documents, are capable of transfer, FSLIC had a basis for its suit. On April 25, 1990 the court issued a final judgment for appellee in the amount of $3,980,515 on the guaranties, including interest and attorneys' fees.[6]

Appellants appealed from this judgment on May 16, 1990 and now advance two arguments. First, they primarily contend that Vernon's misrepresentations constituted not fraud in the inducement, but fraud in the factum, thus taking the misrepresentations outside the *D'Oench* doctrine's reach. Second, appellants argue that the bank's misrepresentation of its financial condition does not fall within the doctrine because appellants acted reasonably and in good faith. We turn to these arguments after reviewing the relevant history of the *D'Oench* doctrine and applying the Eleventh Circuit *D'Oench* standard to the facts before us.

## II

A grant of summary judgment is subject to de novo review by this court. *Vernon v. Resolution Trust Corp.,* 907 F.2d 1101, 1104 (11th Cir.1990). Because the relevant facts are not in dispute, we must determine only whether FDIC is entitled as a matter of law to the summary judgment issued by the district court. *Id.;* Fed.R.Civ.P. 56(c).

## III

The *D'Oench* doctrine was created by the United States Supreme Court in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 *reh'g denied,* 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942). FDIC had sued to collect on notes which had been executed with the understanding that they would never be called for pay-

---

5. The court also held that because there was no written agreement conditioning defendants' fulfillment of their guaranty obligations on the truth of Vernon's representations, it was unnecessary to decide whether the agreement must be reflected in the loan documents. October 25, 1989 Opinion at 15 n. 15.

6. The court entered judgment in favor of FSLIC in the total amount of $3,167,312 and any deficiency remaining after the foreclosure sale of collateral securing two other notes. FSLIC was also awarded prejudgment interest and attorneys' fees. Neither party contests the amount of the awards.

ment. The guarantor defended by alleging failure of consideration, that is, that FDIC's predecessor-in-interest failed to perform a promise—not to call in the loan—that was a condition precedent to payment of the note. The Court held that this "secret agreement" could not be a defense to the FDIC suit because it would tend to deceive federal banking authorities who, given their responsibility to protect the fiscal stability of financial institutions, must be able to evaluate a given bank's true assets and commitments. The Court explained that the guarantor need not have been aware that the secret agreement was designed to mislead federal banking authorities. "It would be sufficient ... that the maker lent himself to a scheme or arrangement whereby the banking authority ... was or was likely to be misled."[7] *Id.* at 460, 62 S.Ct. at 681.

The policy considerations leading to the development of the *D'Oench* doctrine have resulted in its extension "well beyond [the] precise factual setting [found in *D'Oench*]." *Federal Deposit Ins. Corp. v. McCullough*, 911 F.2d 593, 600, *en banc reh'g denied*, 920 F.2d 13 (11th Cir.1990). Most significantly, the Supreme Court has expanded the doctrine to encompass not only a "secret arrangement" such as that found in *D'Oench*, but also "[a] condition to payment of a note, including the truth of an express warranty." *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 96, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987). *Langley* involved the interpretation of 12 U.S.C. § 1823(e),[8] the statutory counterpart of the *D'Oench* doctrine. "[C]ourts have referred to section 1823(e) and the cases interpreting it as guidelines for the applica-

tion of the *D'Oench* doctrine."[9] *Vernon*, 907 F.2d at 1105.

In *Langley*, FDIC had sued to collect on a note guaranteed by defendants in order to purchase land. The defendants argued that FDIC's predecessor-in-interest had procured the note through misrepresentations overstating both the amount of land and the mineral acres in the land and falsely declaring the absence of outstanding mineral leases on the property. No references to these representations appeared in the documents executed by defendants, in the bank's records, or in the minutes of the bank's board of directors or loan committee. The question before the court was whether these representations constituted "agreements" within the meaning of section 1823(e). If the representations were agreements, they would be unavailable as a defense because they did not appear among the bank's documents. *Langley*, 484 U.S. at 88–90, 108 S.Ct. at 399–401.

The Supreme Court rejected the defendants' argument that the word "agreement" encompasses only an express promise to perform an act in the future, as in *D'Oench*, and set out its reasoning as follows:

As a matter of contractual analysis, the essence of petitioners' defense against the note is that the bank made certain warranties regarding the land, the truthfulness of which was a condition to performance of their obligation to repay the loan. As used in commercial and contract law, the term "agreement" often has "a wider meaning than ... promise" and embraces such a condition upon performance. The Uniform Commercial Code, for example, defines agreement as

---

7. *See Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1106 (11th Cir.1990) (holding that *D'Oench* applies equally to FDIC and FSLIC).

8. *See* Federal Deposit Insurance Act of 1950, § 2[13](e), 64 Stat. 889, as amended, 12 U.S.C. § 1823(e) (providing that to be valid as a defense against the FDIC, an "agreement" must be: (1) in writing; (2) executed contemporaneously with the acquisition of the asset by the institution; (3) approved by the board of directors of the depository institution or its loan committee; and (4) continuously, from the time of its execu-

tion, an official record of the depository institution).

9. The exact relationship between *D'Oench* and section 1823(e) is unclear. *See* Note, Borrower Beware: *D'Oench, Duhme* and Section 1823 Overprotect the Insurer When Banks Fail, 62 S.Cal. L.Rev. 253, 271–73 (1988). However, at least one court has declared that "the *D'Oench* doctrine sweeps *more* broadly than [s]ection 1823(e)." *Hartigan v. Commonwealth Mortgage Corp. of America*, 723 F.Supp. 1258, 1261 (N.D. Ill.1989) (emphasis in original).

"the bargain of the parties in fact as found in their language or by implication from other circumstances...." Quite obviously, the parties' bargain cannot be reflected without including the conditions upon their performance, one of the two principal elements of which contracts are constructed. It seems to us that this common meaning of the word "agreement" must be assigned to its usage in § 1823(e) if that section is to fulfill its intended purposes.

*Id.* at 90–91, 108 S.Ct. at 401 (citations omitted). Accordingly, the Court held that "[a] condition to payment of a note, including the truth of an express warranty, is part of the 'agreement'" within the meaning of section 1823(e), *id.* at 96, 108 S.Ct. at 403, and by implication, within the meaning of the *D'Oench* doctrine. As the Court explained,

> one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

*Id.* at 93, 108 S.Ct. at 402. Because the representations alleged by the defendants regarding the land did not appear in the bank's records, the Court held that the defendants were properly estopped from raising them.[10] *Id.* at 96, 108 S.Ct. at 403.

The Supreme Court in *Langley* also reiterated the two purposes underlying the *D'Oench* doctrine. First, the doctrine permits federal and state banking examiners to rely on an institution's records in evaluating its fiscal soundness. Thus, FDIC need not be concerned about undisclosed conditions on notes when assessing the assets of a failed bank and making the often speedy decision whether to liquidate the bank's assets or to initiate a purchase and assumption. Second, it "ensure[s] mature consideration of unusual loan transactions by senior bank officials, and prevent[s] fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Id.* at 91–92, 108 S.Ct. at 401; *cf. Federal Deposit Ins. Corp. v. Merchants Nat'l Bank of Mobile*, 725 F.2d 634, 638 (11th Cir.) (stating that pace of some FDIC reviews does not allow detailed review of a bank's assets), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).

The Eleventh Circuit recently articulated the *D'Oench* standard as follows:

> Whether a borrower's defense is barred by the *D'Oench* doctrine depends upon whether the purported agreement relied upon by the private party was ever memorialized in writing or otherwise made explicit such that the FSLIC or the FDIC would have knowledge of the bank's obligations during an evaluation of the bank's records. If the bank's records reveal that the bank has agreed to certain additional obligations, then the *D'Oench* estoppel doctrine would not preclude a borrower's claim that the bank had not satisfied those additional obligations. In such an instance, the bank's responsibilities are clearly delineated by documents in that bank's files manifesting the bank's reciprocal obligations.
>
> On the other hand, if side agreements or other inducements cannot be determined by a review of the bank's files, then it cannot be said, without additional proof, that the FSLIC or the FDIC was aware of the additional commitments allegedly made by the bank. Given federal policy favoring reasonable reliance upon existing bank records evidencing all of the bank's existing commitments, such unrecorded commitments will not be honored.

*McCullough*, 911 F.2d at 600 (citations and footnote omitted). Under this standard, "the borrower must be able to point to documents that 'clearly manifest[ed] the bilateral nature of the [parties'] rights and obligations.'" *Id.* at 601 (quoting *Federal*

---

**10.** Although *Langley* involved liability of the makers of a promissory note, its reasoning applies to guarantors as well. *Federal Deposit Ins.*

*Corp. v. Galloway*, 856 F.2d 112, 115 (10th Cir. 1988).

*Savings & Loan Ins. Corp. v. Two Rivers Associates,* 880 F.2d 1267, 1275 (11th Cir. 1989)) (brackets in original); *cf. Federal Savings & Loan Ins. Corp. v. Homes Intern. Development Corp.,* 721 F.Supp. 290, 294 (S.D.Fla.1989) (holding that to avoid application of *D'Oench,* "a collateral agreement must be fully integrated and capable of definition without resort to parol evidence"). Because the defendant in *McCullough* was unable to meet this heavy burden, the court affirmed the district court's summary judgment in favor of FSLIC based on the *D'Oench* doctrine.[11]

■ Application of the doctrine as set out in *McCullough* to the facts before us requires a similar result. The present appellants signed facially unqualified guaranties obligating them to pay $3,167,312 upon Vernon's insolvency, which occurred. The condition of payment alleged by appellants—the truth of Vernon's financial statement—was not "memorialized in writing or otherwise made explicit such that the FSLIC or the FDIC would have knowledge of the bank's obligations during an evaluation of the bank's records." *McCullough,* 911 F.2d at 600. Thus, the "bilateral nature of the [parties'] rights and obligations," *id.* at 601 (quotation omitted), e.g., that the truth of Vernon's financial statement was a condition to appellants' fulfillment of their obligations under the guaranties, was not manifest in the documents. *See Two Rivers Associates,* 880 F.2d at 1276 (emphasizing that bank's obligation or acceptance of condition of repayment must be explicit). Such explicit documentation is necessary given the policy underlying the *D'Oench* doctrine: to enable

banking authorities to fulfill their responsibility to protect the fiscal stability of financial institutions. *McCullough,* 911 F.2d. at 600. Especially where banking authorities are determining whether to liquidate a failed bank or to provide financing for purchase of its assets by another bank, an evaluation of a bank's assets and liabilities "must be made with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Langley,* 484 U.S. at 91, 108 S.Ct. at 401 (quotation omitted).

Because the alleged condition of repayment pursuant to the guaranties—the truth of Vernon's financial statement, an agreement under *Langley, see id.* at 96, 108 S.Ct. at 403—was unrecorded and thus not manifest as required by *McCullough,* appellants "lent [themselves] to a scheme or arrangement that is likely to mislead the banking authorities." *Id.* at 93, 108 S.Ct. at 402; *see Federal Deposit Ins. Corp. v. Bell,* 892 F.2d 64, 65–66 (10th Cir.1989) (holding that *Langley* bars defense based on bank's failure to disclose material fact regarding financial condition of company whose obligations were guaranteed by defendant and noting defendant's admission that *Langley* bars bank's misrepresentation of such a material fact), *cert. dismissed,* —— U.S. ——, 110 S.Ct. 2607, 110 L.Ed.2d 286 (1990); *Federal Deposit Ins. Corp. v. Galloway,* 856 F.2d 112, 114–15 (10th Cir.1988) (characterizing *Langley* as holding that representations or warranties made by bank as part of the loan transaction are "agreements" within section 1823(e)).[12] Accordingly, the *D'Oench* doc-

---

11. In *McCullough,* the defendant had orally agreed to assume another's bank loan in consideration for several pieces of real estate and oil leases. However, the documents subsequently executed did not reflect all the real estate and oil leases which the parties allegedly had orally agreed would constitute consideration for defendant's assumption of the loan. Despite the defendant's repeated requests, the documents never were amended to include the missing property and leases. After the defendant had refused to make further payments on the loan and the bank had gone into receivership, FSLIC's predecessor in interest sued for collection on the loan. *See McCullough,* 911 F.2d at 595–96.

12. We note that courts prior to *Langley* identified an institution's misrepresentation of its financial condition as one type of fraud to which *D'Oench* would not apply. *See, e.g., Federal Deposit Ins. Corp. v. O'Neil,* 809 F.2d 350, 354–55 (7th Cir.1987) (noting in dicta that "[f]raud might be relevant if it were independent of any understanding or side agreement as in a case where the borrower is induced to sign a promissory note by an oral misrepresentation that the bank is solvent, and there is no side agreement"); *Federal Deposit Ins. Corp. v. Hatmaker,* 756 F.2d 34, 37 (6th Cir.1985) (noting in dicta that bank's misrepresentation of its financial condition not subject to requirements of section

trine apparently precludes appellants' defenses and counterclaims based on Vernon's misrepresentations.

## IV

We now consider appellants' two attempts to defeat application of the doctrine. First, appellants contend that Vernon's misrepresentation of its financial condition constituted not fraud in the inducement, but fraud in the factum. Second, appellants argue that Vernon's misrepresentation of its financial condition does not fall within the *D'Oench* doctrine because appellants acted reasonably and in good faith.

### A

■ Appellants' primary argument is that Vernon's misrepresentations regarding its financial condition constituted fraud in the factum and thus prevented assent and rendered the guaranties void *ab initio*. This argument relies on dictum in *Langley* suggesting that fraud in the factum would preclude application of the *D'Oench* doctrine. *See Langley*, 484 U.S. at 93, 108 S.Ct. at 402 (noting "[r]espondent conceded at oral argument that ... fraud in the factum ... would take the instrument out of [s]ection 1823(e)"). Assuming, *arguendo*, that fraud in the factum would take Vernon's warranty of its financial condition outside the *D'Oench* doctrine, *but see McLemore v. Landry*, 898 F.2d 996, 1002 (5th Cir.) (declining to read fraud in the factum exception into *Langley* ), *cert. de-*

nied, —— U.S. ——, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990), the facts of the present case do not support a determination that Vernon's conceded misrepresentations went to the character or essential terms of the contract in such a way as to constitute fraud in the factum.

■ Fraud in the factum has been described as "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents," *Langley*, 484 U.S. at 93, 108 S.Ct. at 402, as fraud which occurs "within the instrument itself," *Leasing Services Corp. v. River City Const., Inc.*, 743 F.2d 871, 877 (11th Cir.1984), and as fraud arising "when a party signs a document without full knowledge of the character or essential terms of the instrument," *McLemore*, 898 F.2d at 1002 (quotation omitted). Such fraud arguably would preclude application of the *D'Oench* doctrine because it would render the guaranties void, thus leaving FDIC no basis for suit. Fraud in the inducement, which does not go to the very essence of the agreement but rather merely induces the party to enter the agreement, would not have the same effect because it would render the instrument merely voidable and thus capable of transfer. *Langley*, 484 U.S. at 93–94, 108 S.Ct. at 402–03.

A Sixth Circuit case provides an example of fraud in the factum warranting nonapplication of the doctrine. In *Federal Deposit Ins. Corp. v. Turner*, 869 F.2d 270

1823(e)); *Gunter v. Hutcheson,* 674 F.2d 862, 867 (11th Cir.) (refusing to bar defense based on bank officers' misrepresentations of bank's financial condition as an agreement within meaning of section 1823(e)), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 *reh'g denied,* 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982).

Although the express warranty in *Langley* involved terms of the transaction, not the bank's financial condition, for two reasons the Court's opinion apparently contemplated including a bank's misrepresentation of its financial condition within its holding. First, the opening paragraph of *Langley* bases its jurisdiction on a conflict between the Fifth Circuit's decision in *Langley,* which it affirmed, and two of the cases cited in the paragraph above, *Hatmaker* and *Gunter. See Langley v. Federal Deposit Ins. Corp.,* 484 U.S. 86, 88, 108 S.Ct. 396, 399, 98

L.Ed.2d 340 (1987), *aff'g Federal Deposit Ins. Corp. v. Langley,* 792 F.2d 541 (5th Cir.1986) (barring "a [notemaker's] defense of misrepresentation of existing facts"). The pages cited in *Langley* as conflicting with the Fifth Circuit's decision contain the proposition that an institution's misrepresentation of its financial condition would not be barred by *D'Oench. See Hatmaker,* 756 F.2d at 37; *Gunter,* 674 F.2d at 867; *see also Two Rivers Associates,* 880 F.2d at 1277 (noting that *Gunter* was "undercut" and "rejected" by *Langley* ). Second, the plain language of *Langley*—"[a] condition to payment of a note, including the truth of an express warranty, is part of the 'agreement,' " *Langley,* 484 U.S. at 96, 108 S.Ct. at 403—does not distinguish between an institution's misrepresentation of the terms of a transaction and an institution's misrepresentation of its financial condition.

(6th Cir.1989), the defendant signed for a bank officer a guaranty form with blanks for the debtor's name and the guaranty amount. In the defendant's absence, someone whited out the name of the bank printed on the form, inserted the name of another bank, and filled in the name of a debtor other than one whose debt defendant had expected to guarantee. When defendant learned what had happened, he contacted the bank holding the guaranty and followed the bank's instructions on how to rescind it, including sending a letter which was kept on file at the bank. When he asked for proof of the removal of his guaranty, the bank assured him that it had been removed from the files and destroyed. Subsequently, the bank failed and FDIC stepped in and sued to enforce the guaranty, which had never been removed. *Id.* at 272–73. The Sixth Circuit found fraud in the factum because the whiting out and alteration of the guaranty "defrauded [defendant] as to the guaranty's essential terms." *Id.* at 276; *see also Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 999–1001 (11th Cir.1986) (finding fraud in the factum where evidence showed plaintiffs intended to enter money market account agreement instead of securities account agreement characterized as money market account agreement).

While the misrepresentations in *Turner* involved essential terms appearing on the face of the guaranty, e.g., the names of the bank and the debtor, the present record contains no evidence that appellants had any terms of the unqualified guaranties misrepresented to them. Certainly, appellants were ignorant of Vernon's true financial condition. However, we agree with the district court that appellants "attempt to equate an alleged high degree of fraudulent inducement with lack of knowledge of the essential terms of the guaranty or other agreements." December 4, 1989 Opinion at 3. The record contains no evidence that any appellant signed a guaranty "without knowledge of *its* true nature or contents," *Langley*, 484 U.S. at 93–94, 108 S.Ct. at 402 (emphasis added), that any fraud occurred "within the instrument itself," *Leasing Services Corp.*, 743 F.2d at

877, or that appellants signed the guaranty agreements "without full knowledge of the character or essential terms [thereof]," *McLemore*, 898 F.2d at 1002. Thus, we conclude that the district court properly found that appellants suffered fraud in the inducement, not fraud in the factum.

### B

■ Appellants' second argument accurately recognizes that their good faith and reasonableness distinguishes the present situation from the typical *D'Oench* case, which involves at least some evidence of bad faith, negligence, or recklessness. *See, e.g., D'Oench*, 315 U.S. at 454, 62 S.Ct. at 678 (noting defendant's knowledge that notes would never be called); *McCullough*, 911 F.2d at 601 (suggesting that defendant acted unreasonably under circumstances by not insisting that loan documents reflect inclusion of disputed terms); *Federal Deposit Ins. Corp. v. McClanahan*, 795 F.2d 512, 516 (5th Cir.1986) (emphasizing that borrower acted recklessly by signing blank notes). Such a requirement seems appropriate in light of the Supreme Court's language in *D'Oench*. *See D'Oench*, 315 U.S. at 460, 62 S.Ct. at 681 (requiring the notemaker to have "lent himself to a scheme or arrangement"). The gist of this argument is that when a bank defrauds a borrower and the borrower is innocent of bad faith, recklessness or negligence, the borrower cannot be determined to have lent himself to a scheme. *See* Note, Borrower Beware: *D'Oench, Duhme* and Section 1823 Overprotect the Insurer When Banks Fail, 62 S.Cal.L.Rev. 253, 310 (1988).

We conclude that the *Langley* and *McCullough* decisions as well as the policies underlying *D'Oench* call for application of the doctrine even in the absence of bad faith, recklessness or negligence on the appellants' part. Although the circumstances in *Langley* suggest that the borrowers acted negligently, *see* Note, *supra*, at 311 (describing borrowers' ready access to information disputing bank's alleged oral misrepresentations regarding oil leases and acreage of land) (citing Brief for Respondent at 3, *Langley* ), the Supreme

Court's opinion mentions no requirement of bad-faith, recklessness or even negligence on the part of the borrower. *See Langley,* 484 U.S. at 88–96, 108 S.Ct. at 399–403. Thus, *Langley* suggests that no such evidence is required for application· of the *D'Oench* doctrine. *See Hartigan v. Commonwealth Mortgage Corp. of America,* 723 F.Supp. 1258, 1262 n. 5 (N.D.Ill.1989) (noting that "pre-*Langley* decisions ... call for a greater degree of borrower involvement than the Supreme Court has now made clear is required").[13]

The test articulated in *McCullough* also supports such a conclusion. To be sure, the court did emphasize several acts and omissions on the borrower's part which, taken together, appear to constitute at least negligence. *See McCullough,* 911 F.2d at 601 (noting defendant's execution of the instruments without formalities of a loan closing as an accommodation to the bank, his failure to examine the instruments at the closing, and his knowledge that speed was essential due to an impending visit by bank examiners). However, elsewhere the court indicates that evidence of bad faith, recklessness or negligence on the part of the borrower is not required. *See id.* at 600 n. 6 (stating that *D'Oench* might not apply where "the borrowers are wholly innocent of any misconduct *and, additionally,* cannot be said to have lent themselves to arrangements that might deceive the banking authorities") (emphasis added).

Finally, the nature of the primary policy underlying the *D'Oench* doctrine suggests that its application does not require evidence of negligence, recklessness or bad-faith on the borrower's part. The ability of

banking examiners to rely on an institution's records in evaluating its fiscal soundness would seem to be unaffected by whether or not a· borrower knew or had reason to know of an institution's fraud. Section 1823(e) contains no bad-faith, recklessness, or negligence requirement and thus reflects this understanding of the policy underlying the doctrine.

Accordingly, we reaffirm this circuit's previous holding that the controlling inquiry is "whether the purported agreement relied upon by the private party was ever memorialized in writing or otherwise made explicit such that the FSLIC or the FDIC would have knowledge of the bank's obligations during an evaluation of the bank's records." *Id.* at 600. If the agreement—in this case, the conditioning of appellants' guaranty obligations on the truth of Vernon's financial representations—is not manifest as required by *McCullough,* then the party is deemed to have "lent himself to a scheme or arrangement that is likely to mislead the banking authorities," *Langley,* 484 U.S. at 93, 108 S.Ct. at 402, and is estopped from basing a defense or counterclaim on the agreement. No independent evidence of bad-faith, recklessness, or negligence is required.[14]

Our determination that appellants' fraud-based defenses and counterclaims are barred by the *D'Oench* doctrine "may appear inequitable." *McCullough,* 911 F.2d at 600. However, we are constrained by the *Langley* Court, which determined the following:

> the equities [appellants would have the Court invoke] are not the equities the [doctrine] regards as predominant. While the borrower who has relied upon

---

**13.** Moreover, as discussed previously, *see supra* note 12, *Langley* rejected two cases which stood for the proposition that fraudulent inducement based on an institution's misrepresentation of its financial condition would not fall within *D'Oench.* Such misrepresentation would not necessarily involve bad faith, recklessness or negligence on the borrower's part.

**14.** We note that *Federal Deposit Ins. Corp. v. Meo,* 505 F.2d 790 (9th Cir.1974), and *In re Longhorn Securities Litigation,* 573 F.Supp. 278 (W.D.Okla.1983), on which appellants primarily base their good-faith argument, both preceded

*Langley.* In fact, language in *Meo* reveals that its holding is based on an outdated understanding of the *D'Oench* doctrine. *See Meo,* 505 F.2d at 792 ("We disagree [with FDIC]. *D'Oench* was decided *on the very narrow ground* that an accommodation maker who executes a secret agreement may not take 'advantage of an undisclosed and fraudulent arrangement which [public policy] condemns and which the maker of the note made possible.' " (quoting *D'Oench,* 315 U.S. at 461, 62 S.Ct. at 681)) (emphasis added).

an erroneous or even fraudulent unrecorded representation has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the [doctrine].

*Langley,* 484 U.S. at 94, 108 S.Ct. at 403; *see McCullough,* 911 F.2d at 600 (explaining that the doctrine "favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can") (quotation omitted); *McClanahan,* 795 F.2d at 516 (holding that "[the borrower], rather than the FDIC or the innocent depositors or creditors of the failed bank, must bear the consequences of [the] unfortunate involvement with [the failed bank]"). Thus, the absence of bad faith, recklessness or negligence on appellants' part does not preclude application of the *D'Oench* doctrine.

## V

In light of the foregoing, appellee is entitled to summary judgment as a matter of law. Accordingly, the district court's judgment is AFFIRMED.