FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

William James WHITE, and Atlanta
Financial Resource Management,
Inc., Defendants.

No. 1:92–CV–846.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 31, 1993.

---

William Harrison Buckley, Shereen M. Walls, F.D.I.C. Legal Div., Atlanta, GA, for plaintiff.

William Tarrell Cox, Jr., Powder Springs, GA, for defendants.

## ORDER

CARNES, District Judge.

This case is presently before the Court on plaintiff's motion for summary judgment [# 3–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, grants in part and denies in part plaintiff's motion for summary judgment as to its claim and grants plaintiff's motion for summary judgment as to defendant's counterclaim.

### A. Facts

Plaintiff Federal Deposit Insurance Corporation ("FDIC") is the receiver for The Citizens Bank, Dallas, Georgia ("Citizens Bank"). Citizens Bank executed a loan agreement with defendant William White and defendant Atlanta Financial Resource Management, Inc.[1] The loan agreement provides that defendants promise to pay the principal sum of $700,000. Immediately below that provision, however, the parties checked a provision in the agreement that states:

> Multiple Advance: The principal shown above is the maximum amount of principal I can borrow under this note. As of today I have received the amount of $500,000.00 and future advances are contemplated.

> Conditions: The conditions for future advances are written requests for advances by borrower and progress inspections by lender representative.

(Plaintiff's Exh. 1, Loan Agreement, p. 1).

Defendants defaulted and the deed to secure debt was foreclosed upon. The property sold for $440,000.00 and the sale was confirmed in Civil Action No. D90885 in Fulton County Superior Court.

Plaintiff alleges that defendants executed the promissory note for $700,000.00 and are liable to plaintiff for the remaining debt. Plaintiff seeks a judgment in the amount of $362,309.12, interest up to the date of judgment, attorney's fees, costs of the action, and interest allowed by law.

Defendants filed an answer and a counterclaim. Defendants assert seven defenses in their answer, including that they did not receive notice of the confirmation hearing, that defendant White is not personally liable on the note, that defendants never received $700,000.00, and that the contract was obtained by fraud. Defendants' counterclaim alleges that plaintiff converted some of the funds to its own use, and defendants seek damages of $150,000.00 for conversion and $1,000,000.00 for damage to defendants' credit rating and character.

### B. Discussion

Plaintiff moved for summary judgment on its claim contending that there are no material facts as to which a genuine issue exists to be tried, and that the FDIC, as receiver for Citizens Bank, is entitled to judgment as a matter of law. Plaintiff also moved for summary judgment on defendant's counterclaim, arguing that the counterclaim is barred by *D'Oench, Duhme v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

#### 1. Standard for Summary Judgment

■ Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

---

1. Under one of William White's signatures, the agreement provided in type "William James White 256–08–8383," and under the second signature, in handwriting, it stated "President, Atlanta Financial Resource Management, Inc."

The movant bears the initial responsibility of asserting the basis for his motion. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Apcoa, Inc. v. Fidelity National Bank*, 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence [2] designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

A fact is material when it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " [3] *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

2. Plaintiff's Motion for Summary Judgment on its Claim

Defendants raised several defenses in their answer, including that William White was not personally liable on the note, that defendants did not receive notice of the confirmation hearing, that plaintiff obtained the loan by fraud, and that defendants did not receive $700,000. Plaintiff FDIC asserts that summary judgment is appropriate on its claims because defendants' defenses are barred by the federal holder in due course doctrine and the *D'Oench* doctrine.

In their response to plaintiff's motion for summary judgment, defendants concede that a defense based upon fraud is invalid. Additionally, defendants failed to respond to plaintiff's argument on the issues of William White's personal liability and defendants' notice of the confirmation hearing. The Court considers these defenses abandoned by defendants and grants summary judgment for plaintiff on the personal liability, fraud, and notice defenses.

---

2. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *See Ross v. Bank South*, 837 F.2d 980, 999 (11th Cir. 1988). However, the mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir.1984). Likewise, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir.1984).

3. This standard mirrors the standard for a judgment as a matter of law (previously called a directed verdict) at trial. The question under each is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12.

Defendants' remaining defense is that the note was not for $700,000, as defendants have claimed, but that it set out a line of credit of $700,000, with an initial draw of $500,000 and the right to future advances, conditioned upon written requests by defendants and progress inspections by a lender representative.[4] Defendants concede that the note reflects an obligation to pay the $500,000 that the note indicated to have been advanced and also concede that they received an additional $30,000 advance after the execution of the note, but defendants have filed an affidavit indicating that no other advances were made pursuant to the note in question. Plaintiff has filed no affidavit indicating that any advances were made.

In essence, then, defendants' position is that, as a matter of law, the note reflected an indebtedness of $500,000 plus any other advances for which the plaintiff can provide written documentation. Because defendants have filed an affidavit averring that they received an additional advance of only $30,-000, they argue that there is a question of fact whether their indebtedness is $700,000, as plaintiff claims, or $530,000, as defendants claim.[5] Plaintiff FDIC filed no reply to defendants' response and, accordingly, the Court must conclude that plaintiff relies on the arguments made in its motion for summary judgement: that the *D'Oench* doctrine and plaintiff's status as a holder in due course bar defendants' defense.

The *D'Oench* doctrine was created by the United States Supreme Court in *D'Oench, Duhme v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The doctrine arose from a situation in which a bank obtained a promissory note from the note maker merely to prevent the bank's books from reflecting a loss from another debtor who had defaulted. An understanding existed between the bank and the note maker that the bank would not enforce the note and that the interest paid would be remitted to the note maker. The FDIC attempted to collect on the note after the bank failed, but the note maker contended he owed nothing to the bank. The Court held that the "secret agreement" could not be a defense to the FDIC suit because it would tend to deceive federal banking authorities who, given their responsibility to protect the fiscal stability of financial institutions, must be able to evaluate a given bank's true assets and commitments. *D'Oench, Duhme* at 460, 62 S.Ct. at 680.

The doctrine was later codified at 12 U.S.C. § 1823(e), which provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of the board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e). Courts have found the purposes of § 1823(e) and the *D'Oench* doc-

---

4. As noted *supra,* the loan agreement provides that defendants promise to pay the principal sum of $700,000. The parties, however, checked the provision in the agreement that states:
   Multiple Advance: The principal shown above is the maximum amount of principal I can borrow under this note. As of today I have received the amount of $500,000.00 and future advances are contemplated.
   Conditions: The conditions for future advances are written requests for advances by borrower and progress inspections by lender representative.

5. Actually, consistent with defendants' position that as a matter of law the indebtedness reflected in the note was only $500,000, defendants could have moved for summary judgment as to the issue of damages on the ground that plaintiff has adduced no facts, other than defendants' concession that one advance in the amount of $30,000 was made, to support an inference that additional advances were made and that accordingly the indebtedness, as a matter of law, is $530,000. Because defendants have not moved for summary judgment, the Court considers the merits of their argument only to the extent that it pertains to the question whether plaintiff's motion for summary judgment should be granted.

trine identical and have "construed defenses based upon § 1823(e) and the *D'Oench* doctrine in tandem." *Twin Constr., Inc. v. Boca Raton, Inc.*, 925 F.2d 378 (11th Cir.1991). The Code also extends the protections of § 1823(e) to affirmative claims against the FDIC. 12 U.S.C. § 1821(d)(9) (1989).

The *D'Oench* doctrine has expanded greatly since its articulation by the Supreme Court. *Baumann v. Savers Federal Sav. and Loan Ass'n*, 934 F.2d 1506 (11th Cir. 1991). Under § 1823(e), the courts have protected the FDIC from secret nonpayment agreements, assertions of unwritten arrangements allegedly breached by the bank rendering the debt voidable, and claims that the creation of the debt was fraudulently induced by the bank. *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101 (11th Cir.1990) ("*Vernon I*").

■■■ In essence, then, *D'Oench* bars most defenses by a debtor that relate to matters or agreements outside the four corners of the executed note on the theory that such secret agreements tend to deceive federal banking authorities, who must be able to evaluate a given bank's true assets and commitments. *D'Oench* does not, however, bar those defenses that are manifest on the face of the obligation whose enforcement is being sought. *Vernon I*, 907 F.2d at 1106 n. 4. Further, if the bank's records reveal that the bank has agreed to certain additional obligations, *D'Oench* would not a preclude a borrower's claim that the bank has not satisfied those additional obligations. *Federal Deposit Ins. Corp. v. McCullough*, 911 F.2d 593, 600 (11th Cir.1990).

■■■ In this case, defendant's defense is not based on an agreement outside the promissory note, itself, but is instead an argument that plaintiff, as a matter of law, misconstrues the terms of that note. As such, the

*D'Oench* doctrine does not bar a defense based solely on an interpretation of the contractual language. Rather, the pivotal, or at least preliminary question, is whether, under Georgia law, a borrower who has signed a note such as the note in this case has indebted himself for the full credit limit set out or only for the amount of advances reflected in the note and in other written documentation.[6] Defendants have argued this point, but cited no authority in support. Plaintiff has not responded to this argument. Because the *D'Oench* estoppel doctrine does not address the defense raised in this case, the Court concludes that *D'Oench* does not warrant the granting of summary judgment for plaintiff on this ground.

■■■ Plaintiff FDIC also contends that the federal holder in due course doctrine bars defendants' assertions. Although the Court will assume that plaintiff would be a holder in due course in situations in which that status would affect the outcome, plaintiff has not indicated how such status is dispositive when the question at issue concerns the interpretation of the particular loan agreement, as opposed to a personal defense to that agreement. *Cf. McCullough*, 911 F.2d at 604 (citing Alabama law, Eleventh Circuit notes in *dictum* that holder in due course in that state is subject only to those defenses that could be raised *against the note itself* (emphasis in text). Accordingly, because plaintiff has not demonstrated how being a holder in due course precludes a defense based on an interpretation of the loan agreement, itself, the Court concludes that summary judgment for plaintiff on this ground should also be denied.[7]

**3. Plaintiff's Motion for Summary Judgment on Defendants' Counterclaim**

■■■ In their counterclaim, defendants assert a claim for conversion by the lender of

---

6. In *dictum*, in a case arising under Louisiana law, the Fifth Circuit has indicated that a note such as the note in this case does not directly evidence an existing debt, but instead creates a mortgage for a fictitious debt that can be pledged as collateral security for a real debt. *Federal Savings and Loan Ins. Corp. v. Murray*, 853 F.2d 1251, 1255 n. 1 (5th Cir.1988).

7. The Court considers the legal interpretation of the note to be a central question in this case.

That is, under Georgia law, in a note such as the note in this case, are defendants indebted for the full line of credit indicated in the note or are they indebted only for the amount of the advances that the note and other written documentation indicate to have been made? Because plaintiff has not addressed this issue, the Court will consider any motion to reconsider that focuses on this question, as well any other matter appropriately addressed by such a motion.

an amount in excess of $150,000 and claim that the lender fraudulently induced the loan. Plaintiff argues that *D'Oench* bars such a claim and seeks summary judgment on this counterclaim. The Court agrees.

At the outset, the Court notes that it appears that defendants' response addresses only plaintiff's summary judgment motion as to plaintiff's claim, as opposed to plaintiff's summary judgment motion on defendant's counterclaim. Moreover, by conceding that fraud is not a defense to plaintiff's claim, defendants in essence concede that it cannot be the basis of their counterclaim. Arguably, then, defendants have not opposed plaintiff's motion for summary judgment on the counterclaim.

To the extent that defendants are contesting summary judgment on this counterclaim, their argument does not appear meritorious. As noted *supra*, *D'Oench* bars a debtor from using a fraud in the inducement defense in a context such as this. Accordingly, defendants' fraud claim is barred.

Defendants' conversion claim appears to be another way of arguing that defendants never received any moneys beyond the $500,000 reflected in the agreement and the $30,000 advance that defendants have conceded they received. To the extent that defendants are arguing that they cannot be held liable, as a matter of law, for any indebtedness beyond that reflected as an advance in the note or in other written documentation, resolution of plaintiff's claim will also resolve this question.

To the extent that defendants are arguing merely that they did not receive monies for which the note, as a matter of law, reflects a debt, *D'Oench* and its progeny do bar such a claim. Although the Eleventh Circuit has held that free standing tort claims that are *not* related to a specific asset acquired by the FDIC are not barred by the *D'Oench* doctrine,[8] defendants' counterclaim relates to a specific asset: the loan that Citizens Bank provided to them. In *Vernon I*, the Eleventh Circuit noted that: "In every *D'Oench* doctrine case, save one, the FDIC, the FSLIC, or some successor in interest, assert- ed or defended the validity and enforceability of a particular debt or monetary obligation owed to the failed bank ..." *Vernon I*, 907 F.2d at 1107.

Here, plaintiff FDIC asserted the validity of a particular debt, and defendants responded with a counterclaim for conversion. Because defendants' claim is related to a specific asset, it is therefore barred by the *D'Oench* doctrine. The Court grants summary judgment for plaintiff on defendant's counterclaim.

For the foregoing reasons, the Court GRANTS in part and DENIES in part plaintiff's motion for summary judgment on its claim and GRANTS plaintiff's motion for summary judgment on defendant's counterclaim.

SO ORDERED.

---

8. *Vernon v. FDIC,* 981 F.2d 1230, 1234 (11th   Cir.1993) (*"Vernon II"*).